Steve G. BEEVER et al., Appellants,

v.

W. Sale LEWIS, Savings and Loan Commissioner of Texas, et al., Appellees.

No. 12189.

Court of Civil Appeals of Texas, Austin.

Dec. 11, 1974.

Rehearing Denied Jan. 8, 1975.

Mary Joe Carroll, Clark, Thomas, Denius, Winters & Shapiro, Austin, for appellants.

John L. Hill, Atty. Gen., John H. Banks, Asst. Atty. Gen., Austin, Joe E. Briscoe, Devine, for appellees.

PHILLIPS, Chief Justice.

Appeal here is taken from two orders entered by the Savings and 'Loan Commissioner on the same day and on the basis of a record made at a consolidated hearing on two applications. These were the applications of appellants for charter of a new association to be established in Pearsall, Texas, and that of appellee Medina Savings Association for authority to establish a branch office also in Pearsall, Texas. There was no opposition to either application except to the extent that the proponents of each application assumed that the granting of one would or could prevent the granting of the other.

By the orders which are the subject of this appeal, the Commissioner granted the application of Medina Savings Association to open a branch in Pearsall and denied appellants' application for charter of a new association to be established in Pearsall. Appellants then brought suit in the district court by authority of Section 11.12 of Article 852a, Vernon's Ann.Civil Statutes, seeking a reversal of both orders. After

trial, the court entered judgment affirming both orders of the Commissioner, from which judgment, appeal has been duly perfected to this Court. We affirm the judgment of the district court in upholding the order of the Commissioner denying the appellees' charter application; however, we reverse that portion of the judgment validating the appellees' branch and remand this application to the Savings and Loan Commissioner for further action in accordance with this opinion.

■ At the outset, we sustain appellants' point of error to the effect that the court erred in affirming the Commissioner's order approving the branch application because, while the order sets forth in statutory language findings as to the character, responsibility and general fitness of the persons named in the articles of incorporation (as is required by Sec. 2.08(2) of Article 852a, V.C.S.), it is devoid of any statement of underlying facts in support of that finding. There is no attack upon any of the other findings required by the Commissioner's rule 2.4.

The finding of the Commissioner with respect to character, responsibility and general fitness of the personnel involved in the Medina order is as follows:

"That the character, responsibility and general fitness of the persons named in the Articles of Incorporation, the existing Board of Directors and management of the Applicant Association are such as to command confidence and warrant belief that the proposed branch office of MEDINA SAVINGS ASSOCIATION would be honestly and efficiently conducted in accordance with the intent and purpose of said Act . . ."

At no other point in the order is there any reference made to "the persons named in the Articles of Incorporation." An order identical in that respect was the subject of review in Lewis v. Gonzales County Savings and Loan Association, 474 S. W.2d 453 (Tex.1972). In this case the court quoted Section 11.11(4) of Article

852a requiring that findings of fact, "if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings." It was upon the basis of this statutory provision that the court held that the statutory findings accompanied by concise and explicit statement of the underlying supporting facts is mandatory. Since the order was silent in this respect, the court reversed the case remanding it to the Commissioner for compliance with the statute. Consequently, we must make the same disposition of the case in this appeal, reverse it and remand it to the Commissioner for further proceedings consistent with this opinion.

■ We are well aware that in remanding the branch application to the Commissioner, we are still confronted with appellants' points of error denying the existence of substantial evidence in support of the order and other points hereinafter set out. We are also aware that Lewis v. Gonzales Savings and Loan, *supra,* presents a divided court on the question of whether a reviewing court can pass on any of the remaining statutory findings made by the Commissioner where one or more of these findings has been remanded to the Commissioner for further action on his part in compliance with the statutes. We will, however, follow the majority view of the Supreme Court and pass on appellants' points.

■ We overrule appellants' points contending that the trial court erred in affirming the Commissioner's order approving the branch application because the finding of public need and the probability of profitable operation is without support in substantial evidence and because the testimony offered by the applicant was inadmissible and incompetent. Inasmuch as our discussion of the evidence presented before the Commissioner and his findings pertinent thereto will encompass all evidentiary points presented in this appeal, we also overrule appellants' points complaining

of the error of the trial court in refusing to set aside the Commissioner's denial of appellants' charter application because the Commissioner's finding of no public need is contradicted by the statements of underlying facts purportedly included in support of that finding and is, moreover, without support in substantial evidence; in complaining that the Commissioner's finding that the volume of business is "not such as to indicate profitable operation" is contradicted by the statements of underlying facts purportedly included in support of that finding and is, moreover, without support in substantial evidence.

It is clear from the Commissioner's order, and from the underlying facts stated in support thereof, that he found that the community to be served, or the trade area involved, would simply not support a new savings and loan institution; while, on the other hand, this same area would support the branch office applied for.

The underlying facts reviewed in the order denying appellants' charter are as follows:

"The exact location of the application for charter is 125 South Oak Street, Pearsall, Frio County, Texas to be located in a separately enclosed building. From the testimony of Dr. George Berry who was qualified as an expert witness, the Commissioner finds that the community to be served by this charter application to be domiciled and located at such address in Pearsall, Texas, would be the counties of Frio and La Salle, Texas. As of 1970, the population for these two counties was 16,173, having experienced a slight increase from the 1960 population of 16,084 of 173 people [sic], according to the United States Census. The population of Frio County increased from 10,112 in 1960 to 11,159 in 1970, while the population of La Salle County decreased from 5,972 in 1960 to 5,014 in 1970. The number of outlets of retail sales in Frio County increased 13.2%, while the number of outlets in La Salle County decreased by 5.2% in the 1969 to 1972 period, as reported by Dr. George Berry who obtained this information from the Texas Comptroller of Public Accounts. In 1963, Frio County had 2,565 employed, and in 1972, had 2,895 employed. La Salle County had 2,075 employed in 1963 and 2,105 employed in 1972. The record further revealed that effective buying income in Frio and La Salle Counties had increased 6.65% from 1970 to 1971, totaling $33,786,000 in 1971. As of June 1970, savings deposits of individuals, partnerships and corporations in commercial banks in the two counties approximated $6.8 million, and as of June, 1972, this total was $10.1 million. Thus, the counties have had a slight growth and appear to be areas which are stable, showing a decreased growth in approximated $6.8 million, and as of some instances.

"The record further revealed that Deeds of Trust of $40,000 or less exceeded $3.2 million within the community during the calendar year 1972. In 1969 Deeds of Trust of $40,000 or less exceeded $2.1 million within the community, for an increase of approximately $1 million over a three year period. The three commercial banks in Frio County and La Salle County have made a substantial amount of these loans, with savings and loan associations, insurance companies, mortgage companies, individuals and others participating in the loans made. The savings and loan associations serving the area are Medina Savings Association of Hondo, First Savings Association of Uvalde, Karnes County Savings and Loan Association of Karnes City and Savings and Loan Associations in Bexar County, Texas, and Atascosa Savings Association of Jourdanton, Texas.

"The principal industry in the Counties of Frio and La Salle is farming and ranching. The County of La Salle has experienced decreased growth as evidenced in the figures hereinabove cited.

. . . the County of Frio has experienced some growth."

It is apparent, from a review of these facts as they were developed in the testimony before the Commissioner, that the area to be served according to appellants' application, La Salle and Frio Counties, has experienced very little growth in population during the past decade. The population in one increased slightly, while the population in the other decreased. In addition to the three commercial banks which made a substantial amount of loans in the area, insurance companies and mortgage companies, the area is presently being served by savings and loan associations such as Medina Savings Association of Hondo, First Savings Association of Uvalde, Karnes County Savings and Loan Association of Karnes City. In addition to these the area is served by savings and loan associations in Bexar County and Atascosa Savings Association of Jourdanton, Texas. While this record also reflects that effective buying income in the two counties has increased somewhat recently and that there has been an increase in the dollar value of the Deeds of Trust filed in these counties, reasonable minds could well have concluded that there is no public need for the facility and that the volume of business is not such as to indicate a profitable operation. Consequently, we have substantial evidence substantiated by the required underlying facts as found by the Commissioner supporting the order denying the application. Gerst v. Goldsbury, 434 S.W.2d 665 (Tex.Sup.1968); Gerst v. Oak Cliff Savings and Loan Association, 432 S.W.2d 702 (Tex.Sup.1968).

On the other hand, the Commissioner's order granting the appellees' branch office found that Medina Savings Association, at the time of the hearing, has approved all applications to qualified borrowers in Frio County alone, and presently has loans in that county of $931,601.72. He found that a branch office in the City of Pearsall would enable Medina Savings Association to better service these loans and, further,

attract savings. The order then recites many of the facts testified to by appellants' expert witness Berry as to the slight growth of the area; that the buying income in Frio and La Salle Counties had increased 6.65% from 1970 and 1971; that in June 1970, savings deposits of individuals, partnerships and corporations in commercial banks in the two counties approximated $6.8 million, and as of June 1972, this total had increased to $10.1 million. The record further revealed that Deeds of Trust of $40,000 or less exceeded $2.1 million in 1969, while in 1972 they had increased to $3.2 million. We hold that there is substantial evidence in the record including the required underlying facts to support the Commissioner's findings as to public need for the branch office and for his finding as to the probability of profitable operation. In Strain v. Lewis, 461 S.W.2d 498 (Tex.Civ.App.1971, writ ref. n. r. e.), this Court held that proof that a profitable operation is indicated for a new savings and loan association is different from proof needed to show that a branch office of a savings and loan association will be profitable. The former requires proof that the volume of business in the community it seeks to serve is such as to indicate profitable operation, Art. 852a, Sec. 2.08(3), V.C.S.; while the latter requires only that the volume of business described above where the branch will operate is such as to indicate a profitable operation to the association within a reasonable time. Rules and Regulations of the Savings and Loan Commission, Sec. 2.4(h). The Commissioner could well have found under the evidence that the "growth facts" in the area precluded a charter, while at the same time they supported a branch which must only show profitability within a reasonable time.

■ Appellants further attack the Commissioner's order granting the branch office in that (1) the Commissioner disregarded the "community" concept embodied in the Commissioner's rules and regulations, and (2) the Commissioner's findings of public need and probability of a profita-

ble operation were substantiated by inadmissible and incompetent evidence. We overrule these points.

With respect to the "community" concept, appellants point to the fact that appellees in indicating the proposed area of service for their branch drew a circle on the map with a radius extending for 40 miles in all directions from Pearsall. Appellants contend that the standard for a profitable operation of a branch office is that set out in Section 2.4 of the Commissioner's rules as set out above, and point to Sec. 1.10 of these same rules which state that the term "community" as used in the Texas Savings and Loan Act "shall be considered to mean that geographical area so situated with respect to the proposed location that persons residing in such area could patronize the proposed office in the ordinary course of their business." Appellants then contend that there is no evidence in the record to the effect that persons living within a 40-mile radius of Pearsall would or could patronize a branch office there. We are not impressed with this argument. Even though appellees' 40-mile circle may have been overly ambitious, there is ample evidence in the record made before the Commissioner with respect to Frio and La Salle Counties alone to sustain the feasibility of the branch office. This evidence has already been delineated in this opinion and need not be repeated.

■ Appellants' contention that the Commissioner's findings of public need and probability of a profitable operation were substantiated by inadmissible and incompetent evidence is based, in the main, on the fact that many of the findings of underlying facts used by the Commissioner to bolster the order granting appellees a branch were taken from the testimony of appellants' expert witness Berry, inasmuch as appellees' testimony was woefully weak and lacking in many respects. From this appellants maintain that an applicant for savings and loan authority has the burden of meeting the statutory requisites itself and that it cannot rely upon a case made by a competing or conflicting applicant. We cannot accept this argument and overrule the point raised thereunder. In Gerst v. Nixon, 411 S.W.2d 350 (Tex.Sup.1966) the court held that the order of the Commissioner will stand or fall upon the evidence adduced and matters noticed at the Commissioner's hearing. Witness Berry's testimony at the consolidated hearing was available to the Commissioner as proof of any of the facts developed therein regardless of benefit or detriment to the case of any of the parties involved.

■ We also overrule appellants' point that the trial court erred in approving orders which failed in an instance of conflicting applications, to give preference to a proposed new association which would have local control. Appellants contend that the Commissioner failed to follow the direction of Section 2.14 of Article 852a, V.C.S., which states: "In any instance where there is a conflict between an application for the approval of a charter for a new association and an application for the establishment of an additional office by an existing association both seeking to locate in the same community and the principal office of the existing association is located in a different county than such community, the Commissioner may give additional weight to the application having the greater degree of control vested in or held by residents of the particular community." In Strain v. Lewis, *supra,* we held that the statute quoted above is not applicable where applicants for locally controlled savings and loan associations failed to show a public need and probability of profitable operation in the proposed operation and applicant for branch office showed public need and that the branch would be profitable.

Consequently, we affirm the judgment of the district court in upholding the order of the Commissioner denying the appellees' charter application; however, we reverse

that portion of the judgment validating the appellees' branch and remand this application to the Savings and Loan Commissioner for further action in accordance with this opinion.

Affirmed in part and reversed and remanded in part.